UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


MICHAEL A. LEWIS              ]
     Petitioner,              ]
                              ]
v.                            ]     No. 3:10-0651
                              ]     Judge Sharp
RICKY BELL, WARDEN            ]
     Respondent.              ]


# M E M O R A N D U M

The petitioner, proceeding *pro se*, is an inmate at the Riverbend Maximum Security Institution in Nashville. He brings this action pursuant to 28 U.S.C. § 2254 against Ricky Bell, Warden of the facility, seeking a writ of habeas corpus.

## I. BACKGROUND

On March 1, 2005, a jury in Davidson County found the petitioner guilty of attempted first degree murder. Docket Entry No.30-1 at pg.39. For this crime, he was sentenced as a career offender to sixty (60) years in prison. *Id.* at pg.46.

On direct appeal, the Tennessee Court of Criminal Appeals affirmed the conviction. Docket Entry No.30-8. The Tennessee Supreme Court subsequently declined the petitioner's application for further review. Docket Entry No.30-11.

A *pro se* petition for state post-conviction relief was then

1

filed in the Criminal Court of Davidson County. Docket Entry No.30-12 at pgs.9-24. During the pendency of his state post-conviction proceeding, the petitioner filed a *pro se* petition for federal habeas corpus relief. Lewis v. Tennessee, Civil Action No.3:07-0346 (M.D. Tenn.)(Trauger, J., presiding). Shortly thereafter, though, the federal habeas petition was voluntarily withdrawn. *Id.* at Docket Entry No.10.

Counsel was appointed to prosecute the petitioner's post-conviction petition. Following an amendment of the petition, a post-conviction evidentiary hearing was held to address the petitioner's claims. The trial court denied the petitioner post-conviction relief. Docket Entry No.30-12 at pgs.51-55. On appeal, the Tennessee Court of Criminal Appeals affirmed the denial of post-conviction relief. Docket Entry No.30-17. Once again, the Tennessee Supreme Court denied petitioner's application for further review. Docket Entry No.30-20.

## II. PROCEDURAL HISTORY

On July 2, 2010, the petitioner filed the instant petition (Docket Entry No.1) for writ of habeas corpus. The petition sets forth several claims for relief. These claims include:

    (1) the petitioner was denied a speedy trial;

    (2) the evidence was insufficient to support the conviction;

    (3) it was error to sentence the petitioner as a career offender;

(4) a photograph, not previously provided to the defense, should have been disallowed;[1]

(5) defense counsel was ineffective[2]
   a) for failing to request a pre-trial continuance,
   b) for neglecting to discuss discovery materials with the petitioner,
   c) because he failed to interview witnesses,
   d) for failing to hire an investigator,
   e) because he should have had the pistol tested for fingerprints;
   f) when he failed to object to the introduction of a photo not previously provided to the defense,
   g) for failing to pursue an alternate defense theory, i.e., that someone (Kenny Mooreland) other than the petitioner was the shooter, and
   h) because he should have requested an "elimination prints test";

(6) the trial judge erred by forcing the petitioner to choose between asserting his right to a speedy trial and his right to the effective assistance of counsel.

Upon its receipt, the Court conducted a preliminary review of the petition and determined that the petitioner had stated a colorable claim for relief. Accordingly, an order (Docket Entry No. 12) was entered directing the respondent to file an answer, plead or otherwise respond to the petition. Rule 4, Rules - - - § 2254 Cases.

Presently pending before the Court are the petition,

---

[1] The photograph depicted the petitioner in handcuffs, sitting in a chair with one shoe missing.

[2] At trial, the petitioner was represented by Dwight Scott, a member of the Davidson County Bar.

3

respondent's Motion to Dismiss (Docket Entry No.35), and the petitioner's Reply (Docket Entry No.47) to the Motion to Dismiss. Upon consideration of these pleadings and the expanded record, it appears that an evidentiary hearing is not needed in this matter. *See* Smith v. United States, 348 F.3d 545, 550 (6th Cir. 2003)(an evidentiary hearing is not required when the record conclusively shows that the petitioner is entitled to no relief). Therefore, the Court shall dispose of the petition as the law and justice require. Rule 8(a), Rules - - - § 2254 Cases.

### III. ANALYSIS OF THE CLAIMS

**A.) State Law Claims**

A petition for federal habeas corpus relief may only be granted when it is found that a citizen is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Pulley v. Harris, 104 S.Ct. 871, 875 (1984). Because federal habeas corpus relief is only available to remedy errors of a federal nature, a claim that a conviction is the result of a state court's misapplication of state law is not cognizable unless the petitioner can establish that the error deprived him of a fundamentally fair trial. Porter v. Estelle, 709 F.2d 944, 957 (5th Cir. 1983), *cert. denied sub nom*, Porter v. McKaskle, 466 U.S. 984 (1984).

The petitioner has alleged a sentencing claim (Claim No.3) and an evidentiary claim (Claim No.4) as grounds for habeas corpus

4

relief. The sentencing claim was raised in both the state courts and here as a misapplication of the state's 24 hour merger rule. Docket Entry No.30-6 at pgs.29-34.[3] The petitioner's evidentiary claim was raised in the state courts and here as a violation of Rule 16, Tenn.R.Crim.P. *Id.* at pgs.34-37. These claims are based entirely upon violations of state rather than federal law. Consequently, these claims will not support an award of federal habeas corpus relief.

**B.) Fully Exhausted Claims**

The petitioner's remaining claims (Claim Nos. 1,2,5 and 6) were fully litigated in the state courts on either direct appeal or post-conviction as federal claims and were found to be lacking in merit.

When a claim has been adjudicated on the merits in state court, the state court adjudication will not be disturbed unless it resulted in a decision contrary to clearly established federal law or involved an unreasonable application of federal law in light of the evidence. 28 U.S.C. § 2254(d); Nevers v. Killinger, 169 F.3d 352, 357 (6th Cir.1999). In order for a state adjudication to run "contrary to" clearly established federal law, the state court must

---

[3] Although the petitioner cites Blakely v. Washington, 124 S.Ct. 2531 (2004), Apprendi v. New Jersey, 120 S.Ct. 2348 (2000), and U.S. v. Booker, 125 S.Ct. 738 (2005) in his argument before the state appellate court, he does so merely to show that other enhancement factors would not have been applicable in the calculation of his sentence. Docket Entry No.30-6 at pg.34.

5

arrive at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decide a case differently than the United States Supreme Court on a set of materially indistinguishable facts. To grant the writ for an "unreasonable application" of federal law, the petitioner must show that the state court identified the correct governing legal principle involved but unreasonably applied that principle to the facts of the case. Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000). In short, state court judgments must be upheld unless, after an examination of the state court judgment, the Court is firmly convinced that a federal constitutional right has been violated. *Id.*, at 120 S.Ct. 1511.

**1.) Speedy Trial**

The petitioner was arraigned on December 12, 2001. Docket Entry No.30-1 at pg.8. Trial was set to begin on August 26, 2002. Docket Entry No.30-2 at pg.22. That date, however, was extended to February 24, 2003 when the judge became unavailable.

The February, 2003 trial date was extended by a month by agreement of the parties because prosecution witnesses and a defense witness (Officer Derry Baltimore) were unavailable for trial on that date. *Id.* at pg.24. On March 24, 2003, the trial was once again rescheduled to June 23, 2003 by agreement of the parties in a continuing effort to settle the case.

Petitioner's case did not settle and, on June 23, 2003, the

trial was moved back to January 26, 2004 when the state elected to try another case on that date.[4] Defense counsel (Jerilyn Manning) became ill and left on medical leave. As a consequence, the January 26, 2004 trial date was continued to June 28, 2004.

When it became clear that defense counsel would be unable to try the case, the trial was reassigned to other attorneys (Laura Dykes and Joan Lawson) from the Davidson County Public Defenders' Office. To enable them ample preparation time, the trial was rescheduled for February 28, 2005.

In the meantime, a conflict developed between the petitioner and the attorneys from the Davidson County Public Defenders' Office. Docket Entry No.30-1 at pgs.19-20. These attorneys were allowed to withdraw and Dwight Scott, who ultimately represented the petitioner at trial, was appointed just six weeks before the trial date. *Id.* at pg.21.

Three weeks before trial, the petitioner filed a motion to dismiss for denial of a speedy trial. *Id.* at pgs.22-23. A hearing was conducted and the motion was denied three days prior to the beginning of the trial. *Id.* at pg.32.

The petitioner's trial was continued six times and resulted in a 39 month delay between arraignment and trial. The petitioner's

---

[4] A plea offer of 17 years was made to the petitioner which he chose to reject. Docket Entry No.30-13 at pg.43.

first claim alleges that he was denied a speedy trial.[5]

The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. A violation of this right is analyzed by taking into account the length of the delay, the reasons for the delay, the petitioner's assertion of his right, and prejudice to the petitioner. Doggett v. United States, 505 U.S. 647,651 (1992); Barker v. Wingo, 407 U.S. 514,530 (1972).

The initial question to be asked is whether the delay in bringing the petitioner to trial was presumptively prejudicial. Maples v. Stegall, 427 F.3d 1020,1025 (6th Cir.2005). In this regard, a one year delay between the date of accusation to the beginning of trial is generally considered presumptively prejudicial. *Id.* at pg.126. Here, a 39 month delay occurred between arraignment and trial. Thus, presuming prejudice to the petitioner, the Court must now consider the reasons for the delay and the petitioner's assertion of the right.

The petitioner first asserted his right to a speedy trial in a letter sent to his attorney, Joan Lawson, dated December 12, 2004. Docket Entry No.30-2 at pg.13. The petitioner testified that he was never advised prior to any of the continuances. *Id.* at pgs.41-42. Petitioner's first attorney, Jerilyn Manning, testified that every continuance was either at the request of the defense or

---

[5] Many of the dates used in this recitation of the facts were taken from the petitioner's motion to dismiss.

was agreed to by the defense. She further stated that the continuances were explained to the petitioner and that he never expressed concern at the delay in bringing him to trial. *Id.* at pgs.23-25.

Pre-trial delay is often both inevitable and wholly justifiable. Doggett, *supra.* at pg.656. An example of acceptable delay occurs when the prosecution must seek a continuance to ensure the availability of witnesses. *Id.* In this instance, the reasons for the delay are neutral and are attributable to both the prosecution and the defense. There has been no suggestion that the prosecution sought continuances of the trial in an attempt to obtain some advantage over the defense. Accordingly, the Court finds that the petitioner was not denied his right to a speedy trial.

### 2.) Sufficiency of the Evidence

The petitioner was found guilty of attempting to murder Metro police officer Wesley Tilley. He claims that the evidence was insufficient to support the conviction (Claim No.2).

The right to due process guaranteed by the Constitution insures that no person will be made to suffer the onus of a criminal conviction except upon sufficient proof. Sufficient proof has been defined as the 'evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." Jackson v. Virginia, 99 S.Ct. 2781, 2787 (1979). When

weighing the sufficiency of the evidence to support a criminal conviction, the Court must view the evidence in a light most favorable to the prosecution. *Id.* at 2789.

While on patrol, Officer Tilley noticed a vehicle with three occupants. The vehicle had no tail lights and was being driven on an expired tag. Officer Tilley activated his blue lights and attempted to stop the vehicle. The vehicle, however, sped off. Docket Entry No.30-2 at pgs.77-78.

Officer Tilley followed in pursuit until the vehicle hit the side of a building. All three occupants exited the vehicle and ran from the scene. *Id.* at pg.80. Officer Tilley chased them on foot until they split up. He continued to chase one of the occupants until that individual opened fire on him. *Id.* at pg.85. The officer was hit five times, three times in his protective vest and twice in the arm. *Id.* at pgs.86-88.

After Officer Tilley had been wounded, the shooter ran off, pitching his weapon and losing a shoe in the process. *Id.* at pg.99. A short time later, a K-9 unit arrived at the scene. One of the dogs led officers to a revolver and a shoe lying on the ground. Docket Entry No.30-3 at pgs.84-85. A second dog found the petitioner hiding under a stairwell. *Id.* at pg.106.

When the petitioner was apprehended, he was missing a shoe. *Id.* at pg.116. The shoe found by the K-9 dog appeared to match the petitioner's shoe. *Id.* at pg.117. Glasses belonging to the

petitioner were found at the scene. Docket Entry No.30-4 at pg.352. Officer Tilley identified the petitioner as the man who shot him. Docket Entry No.30-2 at pg.91.

Eric Hazlitt testified that he was driving the vehicle the night of the shooting. Docket Entry No.30-3 at pg.11. The petitioner was a passenger in the back seat. *Id.* Hazlitt noticed that the petitioner was carrying a revolver. *Id.* at pg.49. When Officer Tilley attempted to pull their vehicle over, the petitioner insisted that they flee. *Id.* at pg.13. Hazlitt witnessed Officer Tilley chasing the petitioner. *Id.* at pg.16. A short time later, he heard gunshots.[6] *Id.*

Credibility issues, the weight and value to be given to evidence are questions of fact to be determined by the jury. In this case, the victim identified the petitioner as the man who had shot him. There was more than ample evidence to corroborate Officer Tilley's identification of the petitioner as his shooter. Thus, a jury could have found beyond a reasonable doubt that the petitioner had attempted to kill Officer Tilley. Consequently, the Court finds no merit in this issue.

**3.) Ineffective Assistance of Counsel**

The petitioner alleges eight instances in which counsel was ineffective (Claim No.5a-h). The Sixth Amendment provides that a criminal defendant is entitled to the effective assistance of

---

[6] The petitioner did not testify at trial.

11

counsel. <u>McMann v. Richardson</u>, 379 U.S. 759,771 (1970). An ineffective assistance claim will only succeed, however, if the petitioner can show that his attorney's performance was in some way deficient and that the defense was prejudiced so as to render the criminal proceeding unfair and the result unreliable. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). When considering such a claim, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. <u>Mallett v. United States</u>, 334 F.3d 491, 497 (6th Cir. 2003).

In considering petitioner's ineffective assistance claims, the state courts correctly recognized <u>Strickland</u>, *supra.,* as the applicable standard of review. Docket Entry No.30-17 at pg.8.

During a post-conviction evidentiary hearing, counsel testified that he was prepared to go to trial. Docket Entry No.30-13 at pg.39. He had reviewed all the discovery materials made available to him. Counsel had visited the crime scene, took photos and drew a diagram. *Id.* at pg.45. Counsel met with the petitioner at the jail. *Id.* at pg.15. Given the nature of the charge against the petitioner and the evidence that would be presented, counsel determined that the best course of action would be to attack inconsistencies in the state's proof and challenge the reliability of Officer Tilley's identification. *Id.* at pg.71. He and the petitioner developed a defense strategy of suggesting that another

12

occupant of the vehicle was the shooter. *Id.* at pgs.17-19. They decided that it would be best for the petitioner not to testify because of a lengthy criminal history.

Assuming arguendo that counsel was in some way deficient, the petitioner has failed to show how the alleged deficiencies compromised his defense. The petitioner has not explained how additional time to prepare prior to trial would have changed its outcome. Nor has he demonstrated how the hiring of an investigator, interviewing more witnesses, additional testing of the revolver, or an alternate defense theory, prejudiced him to the extent that he was denied a fair trial. Accordingly, the Court finds that the petitioner was not denied the effective assistance of counsel.

**4.) Speedy Trial versus the Effective Assistance of Counsel**

Prior to trial, newly appointed counsel argued to the court that the petitioner had been denied his right to a speedy trial. In light of this argument, counsel felt that it would be inappropriate to ask the court for a continuance to better prepare for trial. The petitioner's final claim (Claim No.6) is that the trial judge erred when he forced him to choose between asserting his right to a speedy trial and his right to the effective assistance of counsel.

The Court has already determined that the petitioner was denied neither his right to a speedy trial nor his right to the effective assistance of counsel. Consequently, this claim has no merit.

## IV. Conclusion

The petitioner has offered no clear and convincing evidence to rebut the presumption of correctness that must be accorded the factual findings made by the state courts. 28 U.S.C. § 2254(e)(1). Nor has the petitioner demonstrated in what way the legal rationale of the state courts runs contrary to federal law. Therefore, having carefully reviewed the record, it appears that the state court adjudication of petitioner's fully exhausted claims was neither contrary to nor an unreasonable application of federal law. Consequently, these claims will not support an award of habeas corpus relief.

In the absence of an actionable claim, the Court finds that the petitioner's application for habeas corpus relief has no merit. Accordingly, the respondent's Motion to Dismiss shall be granted and this action will be dismissed.

An appropriate order will be entered.

_____
Kevin H. Sharp
United States District Judge